UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-50713 |
| | § | |
| GULF FLEET HOLDINGS, INC., et al., | § | CHAPTER 11 |
| | § | |
| DEBTORS. | § | (Joint Administered With |
| | § | Case Nos. 10-50714, 10-50715, 10- |
| | § | 50716, 100-50717, 1050718, 10- |
| | § | 50719, 10-50720, 10-50721, 10- |
| | § | 50722, 10-50723) |

### THE COMMITTEE'S OBJECTION TO RELIEF GRANTED TO LENDERS IN THE FIRST INTERIM CASH COLLATERAL ORDER AND TO PROPOSED RELIEF REGARDING FURTHER USE OF CASH COLLATERAL

(This Objection refers to Dkt. Nos. 8 and 27)

The Official Committee of Unsecured Creditors (the "Committee") objects to certain relief granted to the Lenders in the First Interim Cash Collateral Order and to the proposed relief regarding further use of cash collateral and respectfully shows as follows:

### Introduction

1. The Committee conducted its formation meeting and retained the undersigned counsel on May 25, 2010 -- only three days prior to the May 28 second interim cash collateral hearing. As of the filing of this objection, the Committee has not yet received a copy of the proposed second interim cash collateral order or the proposed final cash collateral order (to be considered at the currently scheduled June 8 final cash collateral hearing). The Committee has been in discussions with the Debtors and the Collateral Agent and expects to receive a draft of the proposed second interim order today[1]. The Committee understands that the proposed second interim order will be in a form substantially similar to the previously-entered first interim order.

---

[1] As noted below, the Committee believes that it has resolved some of its objections with the Collateral Agent.

The following objection, therefore, addresses only the deficiencies contained in the first interim order. Due to the limited time period between Committee formation and the filing of this objection, the Committee reserves its right to supplement its objection.

### Objections to the Relief Granted to the Lenders

2. The Committee supports the Debtors' continued use of cash collateral, but opposes the extent of the adequate protection provided to the Lenders[2]. The order grants protections often provided under Bankruptcy Code § 364 to parties providing additional financing under a DIP loan. Here, however, the Lenders have not made any additional advances to the Debtors, but nevertheless have sought and obtained adequate protection that does not appear justified on the currently undeveloped evidentiary record. The Committee objects to the following provisions of the first interim order and opposes their inclusion in any subsequent cash collateral orders.

**A.     The Replacement Liens Are Too Expansive.**

3. In paragraph 8, the first interim order grants the Lenders replacement liens in all assets of all of the Debtors except for causes of action arising under certain sections of the Bankruptcy Code and claims of the Debtors in the Hillman Litigation and other claims against Mike Hillman and his non-debtor affiliates. In light of its recent formation, the Committee has yet to determine what assets of the Debtors were unencumbered by the Lenders' liens as of the Petition Date. The Committee is therefore unaware of the extent to which the proposed replacement liens would attach to assets not previously pledged to the Lenders. The Debtors' unencumbered assets may prove to be the only source of recovery for unsecured creditors in

---

[2]     For ease of description, the Committee uses the term Lenders to include all of the parties to whom adequate protection was granted in the first interim order, including the Collateral Agent, the Lenders and the Subordinate Lenders (as those terms are defined in the interim order).

these cases. Accordingly, the replacement liens granted to the Lenders should be just that -- replacement liens to the same extent and in the same priority as their prepetition liens. There appears to be no justification to grant the Lenders' replacement liens that extend beyond the reach of their security interests as of the Petition Date.

B.   **The Lenders' Credit Bid Rights Should Not Be Predetermined.**

4.   In paragraph 8(b), the first interim order grants the Lenders the right to credit bid in connection with any sale of the Debtors' assets regardless whether the sale takes place inside or outside of a plan of reorganization. As for sales under Section 363, the Code expressly provides that a lender's credit bid rights may be constrained or eliminated "for cause." See 11 U.S.C. § 363(k). Further, the Fifth Circuit's recent decision in *Pacific Lumber* permits the denial of credit bid rights in the context of a plan of reorganization. *See In re The Pacific Lumber Co.*, 584 F.3d 229, 245-47 (5th Cir. 2009). Accordingly, the ability of the Lenders to submit credit bids at sales either inside or outside of a plan context is not an absolute right. There is no compelling justification, at this early juncture in the case, to foreclose all challenges to the Lenders' ability to submit credit bids. As written, paragraph 8(b) would also arguably preclude any challenge to the amount of the prepetition indebtedness or the validity of the Lenders' security interest by granting the Lenders "the right to credit bid the full amount of the Prepetition Indebtedness[3]."

---

[3]   The Committee has raised this latter point with the Collateral Agent and expects that the parties will be able to resolve the drafting issue that would appear to preclude challenges to the Lenders' claims in the credit bid context. The parties have not been able to resolve the Committee's broader objection to the pre-approval of the Lenders' credit bid rights.

### C. The Professional Fee Carve-Out is Ambiguous.

5. Paragraph 18(a) of the interim order defines the Carve-Out for estate professional fees. The language should be clarified to provide that the Carve-Out includes all amounts budgeted for the Debtors' and the Committee's respective professional fees through the date on which the Debtors' authorization to use cash collateral is terminated. The Committee has not yet been provided with a copy of the proposed final cash collateral budget and therefore reserves its right to object to the amount budgeted for Committee professionals.

6. Additionally, paragraph 18(b) of the first interim order is ambiguous. It professes to "except" from the definition of Carve-Out the Debtors' chapter 5 causes of actions and any claims with respect to the Hillman Litigation or claims against Mike Hillman and his non-debtor affiliates. Because the Carve-Out serves to exempt funds from the reach of the Lenders' prepetition and post-petition liens, it's unclear how the identified litigation claims are "excepted" from the Carve-Out.

7. The Committee believes that it has reached a resolution of this objection with the Collateral Agent and will be working on modifications to the language of the order.

### D. The Debtors Should Not Be Required to Provide Offer Letters to the Lenders.

8. Paragraph 19(l) requires the Debtors to provide the Collateral Agent with "all documentation that in any way relates to the solicitation, offer, or proposed sale or disposition of any material amount of property of these estates, including, but not limited to, letters of inquiry, solicitations, letters of intent, memorandum of agreements, or asset purchase agreements." This provision significantly intrudes into the Debtors' management of these cases and may impermissibly chill the Debtors' efforts to maximize estate value. As the Court is aware, a potentially-interested party inquiring about the purchase of the Debtors' assets generally

demands that its discussions and negotiations be maintained in confidence. Requiring the Debtors to disclose all such communications to the Lenders will likely either (i) cause interested parties to refrain from engaging in discussions with the Debtors, or (ii) at a minimum, negatively impact the openness of such discussions. Because the disclosure requirements in paragraph 19(l) potentially hamper the Debtor's efforts to maximize estate value, they should not be approved.

E. **All Challenges to the Lenders' Prepetition Claims and Liens Should Be Preserved.**

9. The first interim order appears to reflect an intent by the Debtors and the Lenders to preserve the Committee's rights to challenge the validity and amount of the Prepetition Indebtedness as well as the validity, extent and priority of the prepetition liens and security interests asserted by the Lenders, including the ability to assert all estate claims and causes of action (including subordination and recharacterization) against the Lenders. The language of the order, however, appears to limit (possibly unintentionally) those rights in several respects. The Committee objects to any such restrictions. In particular, the Committee opposes the following provisions of the Order:

- The last sentence of paragraph 4 states as follows:

  > The Debtors (or any party acting by, through or on behalf of the Debtors) may not assert any claim, counterclaim, setoff or defense of any kind or nature which would in any way affect the validity, enforceability, and/or non-avoidability of the Prepetition Indebtedness of the Lenders and Subordinate Lenders and the Collateral Agent's security interests in and liens on the Prepetition Collateral, or reduce or affect the obligation to pay the Prepetition Indebtedness.

- As noted above, paragraph 8(b) appears to grant the Lenders the unfettered right to credit bid "the full amount of the Prepetition Indebtedness."

- Paragraph 18(c) at subparagraph (z) precludes the Debtors and the Committee from using cash collateral in connection with any action "preventing, hindering or delaying (whether, directly or indirectly) the Collateral Agent in respect of its

liens and security interests in the Postpetition Collateral or Prepetition Collateral)."

10. Each of the foregoing provisions of the order impermissibly abridges the Committee's ability to challenge or investigate the Prepetition Indebtedness and should not be authorized. The first two provisions noted above seem to categorically preclude Committee review of the Lenders' prepetition claims and liens. The last provision attempts to artificially constrain the Committee's investigation of the Lenders' claims and the Committee's ability to oppose actions taken by the Lenders in the bankruptcy case. None of the foregoing provisions should be approved.

11. The Committee believes that it has reached a resolution of this objection with the Collateral Agent and will be working on modifications to the language of the order.

### F. The Allocation of Any Adequate Protection Liens and Claims Should Be Preserved for Subsequent Determination.

12. The interim order does not attempt to allocate the Adequate Protection Obligations among the various Debtors. Because it is possible that the Debtors may ultimately have no Adequate Protection Obligations to the Lenders, it is premature to attempt such an allocation. Nevertheless, the Lenders should not have the unilateral right to determine how any Adequate Protection Obligation is ultimately recouped from the various estates. The rights of the Debtors, the Committee, and all other parties to subsequently seek an allocation among the Debtors of any Adequate Protection Obligation should be preserved.

13. The Committee believes that it has reached a resolution of this objection with the Collateral Agent and will be working on modifications to the language of the order.

G. **The Committee Reserves Its Objections to the Budget.**

14. As of the filing of this objection, the Committee has not yet been provided with a copy of the proposed final budget. Accordingly, the Committee reserves its rights to object to the budget at the final hearing.

## Conclusion

The Committee respectfully requests that the Court grant its objections and decline to approve the objectionable provisions identified above.

DATED: May 27, 2010

        Respectfully submitted,

        MCKOOL SMITH P.C.

        By:   */s/ Hugh Ray*
            HUGH RAY
            Bar No. 6673
            PAUL D. MOAK
            (*Pro Hac Vice admission requested*)
            Texas State Bar No. 00794316
            600 Travis, Suite 7000
            Houston, Texas 77002
            Telephone: (713) 485-7300
            Facsimile: (713) 485-7344

        PROPOSED ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing pleading has been served via the ECF system, to the parties on the ECF service list, including Debtors' counsel and the United States Trustee and by email on counsel for the Debtors and counsel for the Collateral Agent and by U.S. Mail on the attached Service List.

                                                */s/ Paul D. Moak*
                                                Paul D. Moak

Gulf Fleet Holdings, Inc., et al.
Service List

Adriatic Marine, LLC
P.O. Box 259
Harvey, LA 70059

BNA Marine Services
P.O. Box 150
Morgan City, LA 70380

BrasCrew Service deRecrutamento
Av. Venezuela
27-10 andar-Centro
Rio de Janeiro
Cep: 20.081-311 Brasil

Coastal Distributors, Inc.
502 Amarillo Drive
Houma, LA 70360

Coastal States FFST, Inc.
P.O. Box 11293
Amelia, LA 70340-1293

Cummins Mid-South, LLC
P.O. Box 842316
Dallas, TX 75284-2316

Doerle Food Services, LLC
113 Kol Drive
Broussard, LA 70518

Fleet Operators, Inc.
P.O. Drawer 350
Morgan City, LA 70381

FPS, Inc. - New Orleans
821 Industry Road
Kenner, LA 70062

Genesis Offshore
P.O. Box 1660
Gray, LA 70359

Hudson Offshore
P.O. Box 1781
Morgan City, LA 70381

NREC Power Systems
1042 Paysphere Circle
Chicago, IL 60674

Odyssea Marine, Inc.
Dept. 37
P.O. Box 4986
Houston, TX 77210

Port Logistic Agencia Maritima
A v. Venezuela, 27-10 andar
Centro-Rio de Janeiro
Cep: 20.081-311 Brasil

Qorval
2210 Vanderbilt Beach Road
Suite 1206
Naples, FL 34109

Star Tech Marine Electronics, Inc.
Fidelity Working Capital, LLC
P.O. Box 2671
Baton Rouge, LA 70821

Stewart Supply, Inc.
P.O. Drawer L
Morgan City, LA 70381

Thoma-Sea Ship Builders, LLC
P.O. Box 399
Bourg, LA 70343

Vacco Marine, Inc.
P.O. Box 8032
Houma, LA 70361

White & Case LLP
200 South Biscayne Blvd.
Suite 4900
Miami, FL 33131

Bank of America, N.A.
GA@-903-0303
1355 Windward Concourse
Alpharetta, GA 30005

Bank One Equity Investors-Bidco, Inc.
Attn: Nemo Viso
236 Third Street
Baton Rouge, LA 70301

Bank of America
P.O. Box 45224
Jacksonville, FL 32232-5224

Brightpoint Capital
Attn: Jeff Zanarini
1001 Brickell Bay Drive., 32nd Fl.
Miami, FL 33131

LBC Credit Partners
Attn: Chris Calabrese
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2868

Comerica Bank
Attn: David Balderach
910 Louisiana St., Suite 410
Houston, TX 77002

Comerica Bank
P.O. Box 650282
Dallas, TX 75265-0282

Office of the United States Trustee
300 Fannin St., Room 3196
Shreveport, LA 71101

Joseph P. Hebert, Esq.
Lislow & Lewis
P.O. Box 52008
Lafayette, LA 70505-2008

Alan H. Katz, Asst. General Counsel
Entergy Services, Inc.
639 Loyola Ave., 26th Floor
New Orleans, LA 70113

R. Patrick Vance
Mark A. Mintz
Jones, Walker, Waechter, et al.
201 St. Charles Ave., 49th Fl.
New Orleans, LA 70170

Steven J. Solomon, Esq.
Gray Robinson, P.A.
1221 Brickell Ave., Suite 1600
Miami, FL 33131

Rhett Campbell
Demetra L. Liggins
Thompson & Knight LLP
333 Clay St., Suite 3300r
Houston, TX 77002

Henry A. King, Timothy S. Madden
and Robert J. Stefani
King, Krebs & Jurgens, P.L.L.C.
201 St. Charles Ave., 45th Floor
New Orleans, LA 70170

Phillip K. Jones, Esq.
Liskow & Lewis
One Shell Square
701 Poydras St., Suite 5000
New Orleans, LA 20139