IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | § | |
|---|---|---|
| IN RE: | § | CASE NO. 10-50713 |
| | § | |
| GULF FLEET HOLDINGS, INC., *et al.* | § | Jointly Administered |
| | § | |
| | § | (Chapter 11) |
| Debtors. | § | |

### RESPONSE OF COMERICA BANK, AS ADMINISTRATIVE AND COLLATERAL AGENT FOR SECURED LENDERS, (A) IN SUPPORT OF ENTRY OF SECOND INTERIM CASH COLLATERAL ORDER; (B) IN OPOSITION TO THE BIDCO OBJECTION, THE LBC OBJECTION, AND THE COMMITTEE'S OBJECTION; AND <u>(C) JOINDER IN DEBTORS' RESPONSE TO BIDCO OBJECTION</u>
[Relates to Docket Nos. 8, 27, 36, 59, 60 and 63]

Comerica Bank, in its capacity as administrative and collateral agent (in such capacity, the "<u>Agent</u>"), for itself and a syndicate of secured lenders (collectively, the "<u>Senior Bank Lenders</u>"), file this response (this "<u>Response</u>"), addressing the Debtors' Cash Collateral Motion[1] and entry of the proposed Second Interim Cash Collateral Order (the "<u>Second Interim Cash Collateral Order</u>") attached as **Exhibit A**.[2] This Response is also in opposition to the BIDCO Objection,[3] the LBC Objection,[4] and the Committee Objection.[5] Finally, this Response joins the Debtors' Response to the BIDCO Objection.[6]

---

[1] *Motion for Emergency Interim Use of Cash Collateral and Grant Replacement Liens pursuant to Section 363(c) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b)* [Dkt No. 8]

[2] The Second Interim Cash Collateral Order continues to be revised based upon discussion with the Debtors and the Committee.

[3] *Limited Objection of Bank One Equity Investors-BIDCO, Inc.("BIDCO") to Certain Relief Granted to Collateral Agent, Lenders and Subordinate Lenders by First Interim Cash Collateral Order and to Relief Proposed by Debtors to be Granted to Collateral Agent, Lenders, and Subordinate Lenders Regarding Further Use of Cash Collateral* [Dkt No. 36]

[4] *Limited Objection of LBC Credit Partners II, L.P. ("LBC") to Certain Relief Granted to Collateral Agent, Lenders and Subordinate Lenders by First Interim Cash Collateral Order and to Relief Proposed by Debtors to be Granted to Collateral Agent, Lenders, and Subordinate Lenders Regarding Further Use of Cash Collateral* [Dkt. No. 60]

## SUMMARY OF RESPONSE

1. The Debtors and the Agent negotiated the terms of the consensual use of the Secured Bank Lenders' Cash Collateral to allow the Debtors to continue to operate their business in the ordinary course. The Debtors' use of the Senior Bank Lenders' Cash Collateral on a consensual basis was embodied in the First Interim Cash Collateral Order[7] entered by this Court on May 18, 2010. Since entry, the Debtors have operated their businesses in accordance with the First Interim Cash Collateral Order and the Debtors and the Agent seek to continue this consensual arrangement pursuant to the Second Interim Cash Collateral Order.

## RESPONSE

2. Through good faith negotiations, the parties have been able to resolve most of the objections raised by BIDCO, LBC, and the Committee. The Agent and the Senior Bank Lenders do not consent to the Debtors' use of Cash Collateral except in accordance with the terms and conditions contained in the second interim cash collateral budget (the "Budget"), attached as **Exhibit B**, and the Second Interim Cash Collateral Order.

   A. **The Replacement Liens are necessary to protect the Senior Bank Lenders' Interests.**

3. As a condition of their consent to the Debtors' use of cash collateral, the Agent, on behalf of the Senior Bank Lenders, requires that the Senior Bank Lenders'

---

[5] *The Committee's Objection to Relief Granted to Lenders in the First Interim Cash Collateral Order and to Propose Relief Regarding further use of Cash Collateral* [Dkt No. 59]

[6] *Debtors' Response to Limited Objection of Bank One Equity Investors-BIDCO, Inc. to the First Interim Cash Collateral Order and to Proposed Further Relief Regarding Further Use of Cash Collateral* [Dkt No. 63]

[7] *First Interim Emergency Order (I) Authorizing Debtors To Use Cash Collateral Pursuant To Bankruptcy Code Sections 105(A), 361, 362, 363 And 364 And, (Ii) Granting Adequate Protection Pursuant To Bankruptcy Code Sections 361, 363(E), 364(E), 364(D) And 364(E).* [Docket No. 27]

RESPONSE TO CASH COLLATERAL OBJECTIONS- PAGE 2
017104 000414 HOUSTON 695146.1

interests be adequately protected. Section 361 of the Bankruptcy Code includes additional or replacement liens as valid forms of adequate protection.[8]

4. The Replacement Liens granted to the Agent and the Senior Bank Lenders are proper as these liens are necessary to compensate for a decrease in the value of the Senior Bank Lenders' interests. The grant of replacement liens is particularly appropriate because the Senior Bank Lenders hold a "floating lien" on all of the Debtors' accounts receivable and inventory.

5. Indeed, the only entities with an interest in the Cash Collateral of <u>any</u> of the Debtors are the Senior Bank Lenders. Neither BIDCO nor LBC have an interest in cash collateral of Gulf Fleet, Gulf Fleet Offshore, or any of the other Debtors. Rather, upon information and belief, BIDCO's collateral is limited to the vessel Gulf Sabre and any insurance policies relating to the vessel:

> **9. COLLATERAL.**
>
> 9.1 <u>Grant of Security Interest</u>. In order to secure payment and performance of the Indebtedness, Borrower hereby grants Lender a continuing security interest in and to the Vessel and all of said Vessel's engines, boilers, machinery, bowsprits, sails, riggings, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, pipe, equipment and all other appurtenances thereunto appertaining and belonging, and all additions, improvements and replacements hereafter made in or to said Vessel, or any part or appurtenance, or equipment thereof, whether onboard or not, all rights under any policies of insurance relating to the Vessel, all insurance or other proceeds in any way attributable to the sale, damage or destruction of the Vessel, and all proceeds thereof (the "<u>Collateral</u>").

Consequently, BIDCO has no interest in Cash Collateral. Upon information and belief, LBC is similarly situated as BIDCO in that their collateral is limited vessel Gulf Sun and related insurance proceeds.

---

[8] 11 U.S.C.§361.
**RESPONSE TO CASH COLLATERAL OBJECTIONS- PAGE 3**
017104 000414 HOUSTON 695146.1

6. The Second Interim Cash Collateral Order does not prejudice the rights of BIDCO in its collateral. It grants a second priority, junior perfected lien on all collateral that is subject to a validly perfected lien as of the Petition Date. Assuming that BIDCO and LBC have properly perfected ship mortgages, the replacement lien on the vessels granted to the Agent and Senior Bank Lenders would be junior to BIDCO and LBC. A junior lien on the vessel Gulf Sabre and the Gulf Sun will not affect the interests of BIDCO as the existing secured creditor. Therefore, the rights of BIDCO and LBC will remain exactly the same as they would have been had no cash collateral order been entered.

7. Moreover, the Agent and the Senior Secured Lenders' interests must be adequately protected. On the Petition Date, Debtors held $1,191,600 in cash; however, the projected cash balance for June 11, 2010 is $217,600. As such, the Debtors will deplete their cash by approximately $974,000.00 during the Second Interim Period. This depletion demonstrates the clear need for the Replacement Liens to adequately protect the Agent's and Senior Bank Lenders' interests.

B. **The Right to Credit Bid is imperative.**

8. The Third Circuit Court of Appeals recently ruled that a chapter 11 debtor may, under some circumstances, sell a secured creditor's collateral free and clear of the creditor's liens without providing the secured creditor with credit bidding rights.[9] The ruling is contrary to the long-held assumption among lenders, based on prior case law, that they would be permitted to credit bid at the sale of their collateral in order to protect the recovery on their secured claims whether the sale was held under section 363 of the Bankruptcy Code or as part of a chapter 11 plan. The Third Circuit's decision echoes another recent circuit

---

[9] *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, (3d. Cir. 2010).
**RESPONSE TO CASH COLLATERAL OBJECTIONS- PAGE 4**
017104 000414 HOUSTON 695146.1

court decision, in which the Fifth Circuit also held that a sale under a chapter 11 plan need not provide for credit bid rights as long as secured creditors receive the "indubitable equivalent" of their claim.[10]

9. These cases indicate, as also addressed in the Committee's Objection, that the Agent and the Senior Bank Lenders' right to credit bid is not necessarily absolute. In exchange for the Debtors' use of its cash collateral, the Agent, on behalf of the Senior Bank Lenders, has negotiated with the Debtors that this credit bid right be expressly provided.

### C. A Superpriority Claim in favor of the Agent is necessary.

10. Subject to the Carve Out, the Adequate Protection Obligations constitute expenses of administration with priority of payment over any and all other administrative expenses. Part of theses expenses are the various costs to maintain the vessel Gulf Sabre, including general and administrative expense, insurance, docking fees, and employment costs. The vessel, however, is not currently chartered and therefore is not generating any revenue. Without the use of the Senior Bank Lenders' cash collateral, the vessel Gulf Sabre could not be preserved. As such, these costs are not only actual, but also necessary.

11. Generally, the actual and necessary costs of preserving the assets of a bankruptcy estate or "administrative expenses" cannot be charged against secured collateral and are only recoverable from the unencumbered assets of a debtor.[11] Section 506(c) of the Bankruptcy Code, however, allows administrative expenses of a bankruptcy estate to be surcharged against a secured creditor's collateral where those expenses are necessary,

---

[10] *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009).
[11] *See In Re Delta Towers, Ltd.*, 924 F 2d 74, 76 (5th Cir. 1991) ("Generally, administrative expenses…are satisfied out of the bankruptcy estate.").

**RESPONSE TO CASH COLLATERAL OBJECTIONS- PAGE 5**
017104 000414 HOUSTON 695146.1

reasonable, and of direct benefit to the secured creditor.[12] If the Debtors are not allowed to use Cash Collateral to maintain the vessel Gulf Sabre, BIDCO should be responsible for the related administrative expenses because (a) the expenses are necessary; (b) the amounts (as provided in the Budget) are reasonable; and (c) BIDCO benefits from the expenditures.[13]

### D. The Carve Out is proper.

12. The Senior Bank Lenders' Cash Collateral should not be used to prosecute claims against the Senior Bank Lenders. The Second Interim Cash Collateral Order provides, consistent with fundamental fairness and well-established practice, that the Committee is permitted to use the Senior Bank Lenders' Cash Collateral to investigate potential claims against the Senior Bank Lenders. The Order, however, prohibits the Committee from using Cash Collateral to actually fund the prosecution of any such claims against the Senior Bank Lenders. While the Agent has agreed to allow $50,000 as a limitation on the use of the Lenders' Cash Collateral to fund the Committee's investigation of the potential claims, it does not agree – and should not be compelled – to make their Cash Collateral in any amount available to fund the Committee's actual "prosecution" of a lien challenge and thereby actually pay for a third party to litigate against the Senior Bank Lenders.

13. The Committee is not entitled to any carve out because a carve out is not a right. Rather, a carve out is an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid out to others, i.e., to carve out

---

[12] 11 U.S.C. § 506(c) ( "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim").
[13] *See Delta Towers*, 924 F.2d at 76 (citing *In re Trim-Z, Inc.* 695 F.2d 296, 299 (7th Cir. 1982).

**RESPONSE TO CASH COLLATERAL OBJECTIONS- PAGE 6**
017104 000414 HOUSTON 695146.1

of its lien position."[14]   Carve outs as part of cash collateral agreements are common in Chapter 11 cases in favor of estate professionals.[15]   They "are used in order to avoid skewing the necessary balance of debtor and creditor protection needed to foster the reorganization process."[16]

      **DATED:**  May 27, 2010.

      **JONES, WALKER, WAECHTER, POITEVENTCARRERE & DENGRE, LLP**

R. Patrick Vance
Louisiana Bar Number 13008
pvance@joneswalker.com
Mark A. Mintz
Louisiana Bar Number 31878
mmintz@joneswalker.com
201 St. Charles Ave., 49th Floor
New Orleans, Louisiana 70170-5100
Telephone:     (504) 582-8368
Facsimile:     (504) 589-8368

**THOMPSON & KNIGHT LLP**
  __/s/ Demetra L. Liggins_____
Rhett G. Campbell
Texas State Bar No. 03714500
rhett.campbell@tklaw.com
Demetra L. Liggins
Texas State Bar No. 24026844
demetra.liggins@tktlaw.com
Three Allen Center
333 Clay Street, Suite 3300
Houston, Texas 77002
Phone:          (713) 654-8111
Facsimile:     (713) 654-1871

      **COUNSEL FOR COMERICA BANK**

---

[14] *Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortg. Corp. (In re Blackwood Assocs.)*, L.P., 153 F.3d 61, 67-68 (2d Cir. 1998).

[15] *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 694 (Bankr. S.D. Tex. 2009) ("The term 'carve out' is one of those uniquely bankruptcy phrases . . . that appears nowhere in the bankruptcy statute but connotes definite meaning to parties. It is an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out of its lien position.").

[16] Evanston Beauty Supply, 136 B.R. 171 (Bankr. N.D. Ill. 1992).

**RESPONSE TO CASH COLLATERAL OBJECTIONS- PAGE 7**
017104 000414 HOUSTON 695146.1

## CERTIFICATE OF SERVICE

  I certify that on May 27, 2010, a copy of the foregoing document was served by to all parties entitled to service via this Court's Electronic Case Filing System ("ECF").

           */s Demetra L. Liggins*
            One of Counsel