**SO ORDERED.**

**SIGNED June 25, 2010.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

|  |  |  |
|---|---|---|
| **IN RE:** | § | **CASE NO. 10-50713** |
|  | § |  |
| **GULF FLEET HOLDINGS, INC.,** *et al.* | § | **Jointly Administered** |
|  | § |  |
| **Debtors.** | § | **(Chapter 11)** |
|  | § |  |

## FOURTH INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION TO LENDERS
[Relates to Docket No. 8, 27, 68, 119]

The Court has considered the *Motion for Emergency Interim Use of Cash Collateral and*

*Grant Replacement Liens pursuant to Section 363(c) of the Bankruptcy Code and Federal Rule*

*of Bankruptcy Procedure 4001(b)* (the "Motion")[1]  filed by Gulf Fleet Holdings, Inc. and certain

of its affiliates and subsidiaries (each a "Debtor" and collectively, "Debtors")[2] wherein the

Debtors request the Court (a) to authorize, under sections 105(a), 361, 362, and 363(c) of the

United States Bankruptcy Code, 11 U.S.C. §§ 105(a) 101-1330, as amended (the "Bankruptcy

---

[1] Dkt No. 8.
[2] The Debtors in these related cases are Gulf Fleet Holdings, Inc., Gulf Fleet Management, LLC, Gulf Fleet LLC, Gulf Fleet Offshore, LLC, Gulf Fleet Marine, Inc., Gulf Ocean Marine Services, LLC, Gulf Service, LLC, Gulf Wind, LLC, Gulf Worker, LLC, Hercules Marine, LLC, and Star Marine, LLC.

Code") the use of Cash Collateral (as defined below) on the terms set forth herein and (b) to schedule, pursuant to Bankruptcy Rule 4001 a final hearing (the "Final Hearing") to consider entry of a final order (a "Final Order") authorizing the Debtors to use Cash Collateral. Based upon all of the pleadings filed with the Court, the evidence presented and the arguments of counsel made at the Interim Hearings; and the Court having noted the appearances of all parties-in-interest; and it appearing that the relief requested herein is in the best interests of the Debtors, their estates and creditors, and such relief being essential for the continued operation of the Debtors' businesses; and upon the record herein; and after due deliberation thereon; and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED THAT:[3]

1. _Disposition_. The Debtors' request to use Cash Collateral is **GRANTED** on the terms and conditions contained in this Fourth Interim Order (this "Order" or the "Fourth Interim Order"). This Fourth Interim Order shall be a valid, binding obligation on all parties-in-interest and fully effective immediately upon its entry.

2. _Termination Date_. The term of Debtors' authority to use Cash Collateral shall expire at 5:00 p.m. CT on **July 14, 2010** (the "Termination Date"). The Debtors and the Agents may extend the Termination Date, without further notice to creditors or order of this Court, provided that a Stipulation Extending Cash Collateral Order signed by counsel to the Debtors, counsel to the Senior Agent, and counsel to the Subordinate Agent is filed together with a copy of a budget if there are changes from the budget, and the Stipulation is served on counsel to the Committee, which shall be provided an opportunity to object to any modifications in the budget.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

3. <u>Jurisdiction; Core Proceeding</u>. This is a "core proceeding" as defined in 28 U.S.C. §157(b)(2)(A)(D) and (M). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b)(1) and 1334(b).

4. <u>Filing</u>. On May 14, 2010, (the "<u>Petition Date</u>"), the Debtors each filed a petition for a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue in the management and possession of their businesses and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. <u>Interim Hearings</u>. On May 17, 2010, May 28, 2010, June 8, 2010, and June 22, 2010, this Court conducted interim hearings (the "<u>Interim Hearings</u>") on the Motion.

6. <u>Interim Orders</u>. On May 18, 2010, this Court entered the First Interim Emergency Order (i) Authorizing Debtors to Use Cash Collateral Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363 and 364 and, (ii) Granting Adequate Protection Pursuant to Bankruptcy Code Sections 361, 363(e), 364(e), 364(d) and 364(e) (the "<u>First Interim Cash Collateral Order</u>").[4] On May 29, 2010, this Court entered the Second Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection (the "<u>Second Interim Cash Collateral Order</u>").[5] On June 9, 2010, this Court entered the Third Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protections (the "<u>Third Interim Cash Collateral Order</u>").[6]

7. <u>Final Hearing</u>. The Final Hearing on the Motion shall be held on **July 14, 2010 at 9:00 a.m.** before the Honorable Robert Summerhays, United States Bankruptcy Judge, at the United States Bankruptcy Court, 214 Jefferson Street, Lafayette, Louisiana 70501.

8. <u>Objections.</u> All objections shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later

---

[4] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.
[5] Dkt. No. 68.
[6] Dkt. No. 119.

than 5:00 p.m. (prevailing Central Time) on July 7, 2010 (the "Objection Deadline") by the following: (a) counsel to the Debtors, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, 601 Poydras Street, Suite 2775, New Orleans, Louisiana (Attn: Stewart Peck); (b) counsel to the Committee, McKool Smith P.C., 600 Travis Street., Suite 7000, Houston, Texas 77002 (Attn: Hugh Ray); (c) counsel to the Senior Agent, Thompson & Knight LLP, Three Allen Center, 333 Clay Street, Suite 3300, Houston, Texas 77002 (Attn: Rhett G. Campbell); (c) the U.S. Trustee; and (d) counsel to the Subordinate Agent, Gordon, Arata, McCollam, Duplantis & Eagen, L.L.P., One American Place, 301 Main Street, Suite 1600, Baton Rouge, LA 70801-1916 (Attn: Louis M. Phillips).

9.    Committee.    On May 24, 2010 the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee"). To date, no request has been made for the appointment of a trustee or examiner

10.    Pre-Petition Indebtedness.    As of the Petition Date, the Debtors were alleged to be indebted and liable without recourse, counterclaims or offset of any kind to: (i) Comerica Bank, in its capacity as administrative agent (Comerica Bank may be referred to herein as "Comerica" or the "Senior Agent") and the financial institutions (the "Senior Bank Lenders") from time to time signatories to that certain Revolving Credit and Term Loan Agreement, dated May 1, 2007, as amended by that First Amendment to Revolving Credit and Term Loan Agreement, dated as of August 13, 2007 and that Second Amendment to Revolving Credit and Term Loan Agreement dated January 13, 2010, made by and among Gulf Fleet Holdings, Inc., as Borrower, Comerica Bank, as Administrative Agent and Agent, as Issuing Lender and as Swing Line Lender, Guaranty Bank, as Syndication Agent, ING Capital LLC, as Documentation Agent, PNC Bank, National Association, as Borrowing Base Agent, and the Senior Bank Lenders (the "Credit

Agreement"), the unpaid balances on the Term Loan and the Revolver Facility being in the amount not less than $35,994,134.03 principal plus accrued and unpaid interest of $369,439.80, and $1,453,568.67 principal plus accrued and unpaid interest of $18,475.96, respectively, plus attorneys' fees, expenses and costs of collection, all calculated as of May 14, 2010 (which shall continue to accrue interest to the extent allowed by the Bankruptcy Code) (herein in the aggregate the "Senior Indebtedness"), and (ii) Brightpoint Capital Partners Master Fund, L.P., in its capacity as administrative agent (the "Subordinate Agent" or "Brightpoint") and the financial institutions (the "Subordinate Lenders") from time to time signatories to that certain Term B Loan Agreement dated as of May 1, 2007, by and among the Subordinate Lenders, the Subordinate Administrative Agent, Gulf Fleet Holdings, Inc., (as borrower), and the Guarantors (defined therein) (the "Subordinate Credit Agreement"), in the amount not less than $7,600,165.30 as of May 14, 2010 (which shall continue to accrue interest to the extent allowed by the Bankruptcy Code) (herein the "Subordinated Indebtedness") (the Credit Agreement, the Subordinate Credit Agreement, and that certain Subordination and Collateral Agency Agreement dated as of May 1, 2007, and entered into by and among Comerica, in its capacity as administrative agent for the First Lien Secured Parties (as defined therein), and as collateral agent for the Secured Parties (as defined therein), Brightpoint, in its capacity as agent for the Second Lien Secured Parties (as defined therein) and Gulf Fleet Holdings, Inc. (the "Intercreditor Agreement"), and any security agreements, pledge agreements, UCC filing authorization letters, control agreements, instruments, mortgages, deeds of trust, fixture filings and financing statements and any other documents executed and delivered pursuant thereto or otherwise evidencing or securing the Credit Agreement and the Subordinate Credit Agreement, as each may have been previously amended, supplemented, or modified from time to time, the "Pre-

Petition Credit Documents"), together with alleged accrued and unpaid fees, costs and expenses (collectively, the "Pre-Petition Indebtedness"). All Collateral (as defined in the Pre-Petition Credit Documents) that existed as of the Petition Date and all Pre-Petition and Post-Petition proceeds thereof shall hereafter be referred to as the "Pre-Petition Collateral." As of the Petition Date, the Debtors believe, subject to verification by counsel, that (a) the Pre-Petition Credit Documents are valid and binding agreements and obligations of the Debtors, fully enforceable in accordance with their terms; (b) the Agent's and the Senior Bank Lenders' liens on and security interests in the Pre-Petition Collateral are valid, perfected, enforceable, non-avoidable and, except as specifically permitted under the Pre-Petition Credit Documents, first priority liens and security interests. For the avoidance of any doubt, the Senior Bank Lenders' claims, liens, and security interests have priority over the Subordinate Lenders' claims, liens, and security interests as provided for in the Intercreditor Agreement.

11. The Debtors (or any party acting by, though or on behalf of the Debtors but not including the Committee) may not assert any claim, counterclaim, setoff or defense of any kind or nature which would in any way affect the validity, enforceability and/or non-avoidability of the Pre-Petition Indebtedness of the Senior Bank Lenders and the Subordinate Lenders (collectively, the "Cash Collateral Lenders") and the security interests in and liens on the Pre-Petition Collateral of the Senior Agent and the Subordinate Agent (collectively, the "Agents"), or reduce or affect the obligation to pay the Pre-Petition Indebtedness. Nothing in this paragraph shall limit the Committee's right to (i) object to or otherwise challenge the claims of the Agents and the Cash Collateral Lenders, including contesting the amount or validity of the Pre-Petition Indebtedness; (ii) challenge the extent, validity, or priority of the security interest and liens of the

Agents, the Cash Collateral Lenders, or (iii) assert any estate claims against the Agents or the Cash Collateral Lenders (collectively, the "Challenge Rights").

12.      Binding Agreement.   The agreements and arrangements authorized under this Fourth Interim Order have been negotiated at arm's length, are fair and equitable under the circumstances, and are enforceable pursuant to their terms.  The Debtors and the Agents have acted in good faith (including, without limitation, as that term is used in Section 363 of the Bankruptcy Code and otherwise) in the negotiation and preparation of this Fourth Interim Order, have been represented by counsel, and intend to be and are bound by the terms of this Order.

13.      Cause Shown.   Good cause has been shown for the entry of this Fourth Interim Order.  The Debtors require the use of Cash Collateral of the Cash Collateral Lenders in order to continue their ordinary course business operations and to maintain the value of their bankruptcy estates.  The Agents and the Cash Collateral Lenders have agreed to permit the Debtors to use their Pre-Petition Collateral, including Cash Collateral, on an interim basis, on the terms and conditions provided for herein, commencing on the Petition Date and expiring on the Termination Date (the "Interim Period").  Among other things, entry of this Fourth Interim Order will maximize the value of the Debtors' assets and avoid immediate and irreparable harm to, and is in the best interests of, the Debtors, their estates and their creditors.

14.      Cash Collateral.   For purposes of this Fourth Interim Order, "Cash Collateral" shall mean all cash, cash equivalents, negotiable instruments, refunds, documents of title, securities, deposit accounts, or other cash equivalents.  Cash Collateral shall also consist of all of the Debtors' property that constitutes cash collateral in which the Agents and the Cash Collateral Lenders (to the extent they hold first liens in such cash collateral) have an interest as provided in section 363(a) of the Bankruptcy Code and shall include, without limitation:

(a)     All cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property upon which the Agents and the Cash Collateral Lenders hold liens or replacement liens, whether as part of the Pre-Petition Collateral or pursuant to an order of the Court or applicable law or otherwise (but specifically excepting all proceeds (cash and non-cash) or insurance proceeds that are subject to a valid and perfected security interest or lien existing in favor of any party holding a valid and perfected mortgage or lien as to the vessel Gulf Sabre or the vessel Gulf Sun and all insurance proceeds with respect to the vessel Gulf Sabre or the vessel Gulf Sun and to which the vessel mortgagee of such vessel may be contractually entitled), and whether such property has been converted to cash or existed as of the Petition Date; and

(b)     All of the respective deposits and refund claims of the Debtors upon which the Agents and the Cash Collateral Lenders hold liens or replacement liens, whether as part of the Pre-Petition Collateral or pursuant to an order of the Court or applicable law or otherwise (but specifically excepting all deposits and refund claims that are subject to a valid and perfected security interest or lien existing in favor of any party holding a valid and perfected mortgage or lien as to the vessel Gulf Sabre or the vessel Gulf Sun), and the Debtors' cash on hand as of the Petition Date. Cash Collateral shall also include, but only to the extent permitted by law and § 552(b), and to the extent that the Agents and the Cash Collateral Lenders have liens, and not otherwise and Debtors make no admission and reserves all rights with respect thereto, the Post-Petition accounts, accounts receivable and cash proceeds generated by the vessels that constitute, in part, the Pre-Petition Collateral. By this Fourth Interim Order, the Court expressly does not decide whether and to what extent Cash Collateral extends to the Post-Petition accounts, accounts receivable and cash proceeds generated by the property that constitute, in part, the Pre-Petition Collateral.

15.     Cash Collateral Account. All Cash Collateral shall be deposited into one or more debtor-in-possession Cash Collateral accounts to be maintained at Comerica, provided, however, such accounts shall be established, maintained and shall be subject to the rules and regulations of the U.S. Trustee. All such Cash Collateral accounts shall contain only Cash Collateral and shall not be commingled with any other funds. The Debtors shall maintain adequate books and records so as to be able to track the sources and uses of all Cash Collateral.

16.     Limited Authorization to Use Cash Collateral. The Agents and the Cash Collateral Lenders do not consent to the Debtors' use of Cash Collateral except in accordance with the terms and conditions contained in the fourth interim cash collateral budget (the

"Budget"), attached as **Exhibit A**,[7] and this Fourth Interim Order (as same may be extended from time to time as provided herein).

(a)     Subject to the terms and conditions of this Fourth Interim Order and Budget, the Cash Collateral Lenders have agreed to permit the Debtors to use the Cash Collateral, on an interim basis, on the terms and conditions provided herein, commencing on the Petition Date and expiring on the Termination Date.  Subject to the limitation stated hereafter, the Debtors may use Cash Collateral only up to and in accordance with those identified categories of expenses and specified amounts set forth in the Budget, which will permit the Debtors to fund only (i) the necessary operating expenses (but not capital expenditures[8]) of the Debtors' businesses during the Period;  (ii) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) (the "Statutory Fees");  (iii) the identified fees of counsel, financial advisors and accountants for the Debtors and counsel for the Committee incurred before any delivery of a valid Enforcement Notice in the respective amounts not to exceed the limits set forth in the Budget; and (iv) other necessary and required expenses but only if consented to in writing by the Agents.  Notwithstanding anything in this Fourth Interim Order to the contrary, no Cash Collateral may be used or transferred to any of the Debtors' non-debtor subsidiaries or affiliates, without the prior written consent of the Senior Bank Lenders.

17.    Adequate Protection.  Any obligations of the Debtors arising under this paragraph and/or paragraphs 18 and 21 hereof are referred to herein as "Adequate Protection Obligations."

---

[7] The budget attached hereto as **Exhibit A** shall be construed to permit a variance of 10% per line item, provided, that, no amount of variance can be applied from one item to another line item without the express written consent of the Agent.

[8] "Capital Expenditures" means, with respect to any Debtor for any period, any expenditure in respect of the purchase or other acquisition of any fixed or capital asset (excluding normal replacements and maintenance, which are properly charged to current operations).

As adequate protection to secure the Cash Collateral Lenders with respect to any diminution in the value of the Cash Collateral in existence as of the Petition Date in accordance with sections 361(2), 363(e) and 364(d) of the Bankruptcy Code, the Agents, for the benefit of the Cash Collateral Lenders are hereby granted adequate protection as follows:

(a)     The Debtors hereby grant to the Agents, for the benefit of the Cash Collateral Lenders, in each case subject and subordinate to the Carve-Out (as defined below), (i) valid, perfected, and enforceable replacement liens on and first priority Post-Petition security interests (the "Replacement Lien") in all assets of any of the Debtors of any kind or nature whatsoever, whether real or personal, tangible or intangible, wherever located, including, without limitation, all accounts (including intercompany accounts receivable), cash (including the Cash Collateral), chattel paper, contract rights, deposit accounts, documents, general intangibles, fixtures, goods, instruments, inventory, investment property, leases, letters of credit, letter-of-credit rights, machinery and equipment, payment intangibles, real property, supporting obligations, all commercial tort claims and all causes of action arising under the Bankruptcy Code or otherwise (provided, that, such causes of action shall not include any claims, causes of action and recoveries realized pursuant to sections 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code, and any and all claims the Debtors may have in connection with the Hillman Litigation and all other claims, rights, demands, and causes of action the Debtors may have against Mike Hillman and non-debtor affiliates of Mike Hillman collectively, the "Excluded Causes of Action"), and all proceeds thereof (except those attributable to claims, if any, against the Agents or the Cash Collateral Lenders), including all intellectual property ("Intellectual Property"), all of the stock of each direct and indirect subsidiary of each of the Debtors excluding new equity for new value issued in connection with a plan of reorganization, and all other property of each of the Debtors' estates (as defined in section 541(a) of the Bankruptcy Code) and all proceeds, products, offspring, rents and profits of all of the foregoing, acquired by the Debtors after the Petition Date (collectively, the "Post-Petition Collateral"), which shall at all times be senior to (A) the rights of the Debtors and any successor trustee or estate representatives in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code, (B) any intercompany claim of any domestic or foreign subsidiary or affiliate of the Debtors, and (C) any security interest or lien of any creditor or other party in interest in the Chapter 11 Cases other than (x) the Permitted Liens (as such term is defined in the Prepetition Credit Documents) (y) any valid, enforceable, non-avoidable, perfected liens attached to property upon which the Cash Collateral Lenders and the Agents do not have a lien as of the Petition Date, including, but not limited to the vessels Gulf Sabre and Gulf Sun; (z) any valid, enforceable, non-avoidable, perfected liens attached to property upon which the Cash Collateral Lenders and the Agents have a lien, but are senior to the liens of the Cash Collateral Lenders and the Agents, including, but not

limited to the vessels Gulf Sabre and Gulf Sun; or (d) as otherwise set forth in this Fourth Interim Order; (ii) to the extent the Replacement Liens are insufficient to provide the Agents and the Cash Collateral Lenders with adequate protection, an allowed administrative superpriority expense claim against each Debtor on all of the Post-Petition Collateral, subject to the Carve-Out, recoveries attributable to or arising from claims, if any, against the Agents, the Cash Collateral Lenders, and the Permitted Liens, as defined in the Pre-Petition Credit Documents; and (iii) to the extent allowed by law, the right to continue to accrue and add to the Pre-Petition Indebtedness expenses of the Agents or the Cash Collateral Lenders, incurred and to be incurred in connection with the Chapter 11 Cases including negotiating, monitoring, and implementing the Cash Collateral granted under this Fourth Interim Order.

18. <u>Replacement Liens</u>. The Replacement Liens granted hereby (a) shall be in addition to all security interests and liens now existing, if any, in favor of the Agents, the Cash Collateral Lenders and not in substitution therefore or limitation thereof; and (b) shall be effective as of the Petition Date. The priority of the Replacement Liens shall be expressly subject to and shall be determined in accordance with the terms and conditions of the Intercreditor Agreement.

19. <u>Validity, Perfection, and Priority of the Replacement Liens</u>. This Fourth Interim Order shall be conclusive evidence of the validity, perfection, and priority of the Replacement Liens on the Post-Petition Collateral to secure the Adequate Protection Obligations, if any, without the necessity of filing or recording any financing statement or other instrument or document or notification (and, with respect to cash), without having possession of, or dominion and control over, such cash) which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Replacement Liens in the Post-Petition Collateral or to entitle each of the Agents and the Cash Collateral Lenders to the priorities granted herein, provided that the Debtors may execute and the Agents and/or the Cash Collateral Lenders may file or record financing statements or other instruments or provide notice to evidence and perfect the Replacement Liens authorized hereby, provided further, that the

validity, perfection and priority of the Agents and the Cash Collateral Lenders' liens on the Pre-Petition Collateral shall be subject to paragraph 27(f) hereof. The amount and priority of the Replacement Liens shall be expressly subject to the terms and conditions of the Intercreditor Agreement. Nothing in this Fourth Interim Order shall alter the terms of the Intercreditor Agreement.

20.     <u>Filing of Financing Statements Not Required</u>.  The Agents and/or the Cash Collateral Lenders may file a copy of this Fourth Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property. This Fourth Interim Order, once approved by the Bankruptcy Court, shall evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors in accordance with their terms.

21.     <u>Superpriority Claim</u>.  To the extent that the Replacement Liens prove insufficient to provide the Agents, for the benefit of the Cash Collateral Lenders, with adequate protection as described in paragraphs 18 and 21 hereof solely for the diminution of Cash Collateral in existence at the Petition Date, the Agents and the Cash Collateral Lenders shall hereby be afforded an allowed administrative superpriority expense claim (the "<u>Superpriority Claims</u>") against each Debtor in the full amount of the Adequate Protection Obligations, if any, with priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), and to the extent permitted by law, 726 and 1114 of the Bankruptcy Code, except for the Carve-Out. The amount and priority of the administrative superpriority expense claim shall be expressly subject to the terms and conditions of the Intercreditor Agreement. Nothing in this Fourth Interim Order shall

alter the terms of the Intercreditor Agreement. The Superpriority Claims shall not be payable from the proceeds of and recoveries from the Excluded Causes of Actions or any claims against the Agents, the Cash Collateral Lenders.

22.     Insurance.    The Debtors shall maintain, with financially sound and reputable insurance companies, insurance with respect to all of the Pre-Petition Collateral and Post-Petition Collateral for all the purposes in accordance with the requirements of the Pre-Petition Credit Documents (covering such risks and in amounts as shall be satisfactory to the Agents and the Cash Collateral Lenders).    Such insurance shall contain a standard mortgage clause with the Senior Agent named as loss payee.

23.     Collateral Maintenance.    The Debtors shall maintain the Pre-Petition Collateral in good repair and condition and not permit or commit any waste thereof.

24.     Record Maintenance.    The Debtors shall maintain accurate records for the expenditures of each Debtor.

25.     Termination of Cash Collateral Usage.    Without effect on any other provision of this Fourth Interim Order, the Debtors' authorization to use Cash Collateral (subject to and on the terms and conditions of this Fourth Interim Order), shall immediately and automatically terminate upon the earlier of the Termination Date or any Termination Event (as defined below). If the Debtors' right to use Cash Collateral has not been previously terminated pursuant to the provisions of this Fourth Interim Order, such right may be extended only upon the written consent of the Agents and by order of this Bankruptcy Court.

26.     Termination Events.    The Debtors' right to use Cash Collateral shall immediately and automatically terminate, upon the earliest to occur of the following (each a "Termination Event"):

(a)     any default, violation, or breach of any of the terms of this Order, by any of the Debtors, including the any of the Debtors' failure to use the Cash Collateral in strict compliance with this Fourth Interim Order and the Budget;

(b)     the Termination Date (or such later date as may be agreed to in writing by the Debtors and the Agents);

(c)     the entry of an order, without the prior written consent of the Agents (i) converting any of these Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code; (ii) dismissing any of these Chapter 11 Cases; (iii) appointing a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code or appointing an examiner with expanded powers (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code in any of these Chapter 11 Cases); or (iv) reversing, vacating or otherwise amending, supplementing or modifying this Fourth Interim Order;

(d)     the entry of an Order invalidating, subordinating or otherwise challenging the Superpriority Claims or Adequate Protection Obligations granted to the Senior Bank Lenders under the First Interim Order, the Second Interim Order, the Third Interim Order, or to the Cash Collateral Lenders under this Fourth Interim Order;

(e)     the closing of a sale of substantially all of the Debtors' assets pursuant to court order, regardless of whether such sale is completed in one transaction or a series of transactions (but specifically excepting any transfer or conveyance, whether voluntary or involuntary, and however accomplished, of the vessel Gulf Sabre or the vessel Gulf Sun to any party possessing a valid and perfected mortgage or lien on either vessel or to any third party); or

(f)     the entry of an order granting the Debtors' motion in these Chapter 11 Cases to (i) obtain financing under Section 364 of the Bankruptcy Code from any person or entity other than the Senior Bank Lenders; or (ii) grant any lien or offering of any Collateral.

If any Debtor fails to comply with any term, condition or requirement of this Fourth Interim Order or breaches any provision of this Fourth Interim Order in any material respect, such failure or occurrence shall be an "Event of Default".  Upon the occurrence of an Event of Default, the Senior Agent shall provide ten (10) calendar days written notice of such Event of Default (which notice may be delivered by electronic mail, the "Cure Period") (an "Enforcement Notice")) to the Debtors, their counsel, the U.S. Trustee, and counsel for the Committee.  To the extent an Event of Default is not cured by the Debtors on or before the eleventh (11th) calendar day following written notice, such Event of Default shall be deemed a Termination Event.  Notwithstanding

anything herein to the contrary and in addition to other cure rights, if any, an Event of Default may be cured by the payment to Cash Collateral Lenders of any diminution in Cash Collateral existing at the Petition Date and there being no further use of any Pre-Petition Cash Collateral.

27.  Enforcement.  Upon the occurrence and continuation of a Termination Event the Agents and the Cash Collateral Lenders shall be entitled, at their option, to request the Court to enforce and foreclose, in accordance with applicable state law the Adequate Protection Obligations granted pursuant to this Fourth Interim Order.  Termination of the Debtors' right to use Cash Collateral or termination of the automatic stay pursuant to the provisions of this paragraph shall in no manner affect the validity, enforceability, or priority of the Adequate Protection Obligations, the Replacement Liens, the Superpriority Claims, or other protections afforded to the Agents, for the benefit of the Cash Collateral Lenders pursuant to the provisions of this Fourth Interim Order.  The Debtors shall have the right to contest in writing the existence of a Termination Event prior to the expiration of the Cure Period.  The Parties agree to seek an expedited hearing to adjudicate their dispute.

28.  Carve-Out.  (a) As used herein, the term "Carve-Out" shall mean (i) the Statutory Fees; and (ii) accrued, but unpaid professional fees of the Debtors and the Committee, to the extent ultimately allowed by the Court, limited to (A) the amounts set forth in the Budget (including separate line items for the Debtors and the Committee) and (B) amounts that have been incurred prior to the delivery to the Debtors and their counsel and the Committee's counsel of a valid Enforcement Notice; and (iii) after delivery to the Debtors and their counsel and the Committee's counsel of a valid Enforcement Notice, the payment of professional fees and disbursements (regardless of whether approved and unpaid or pending approval by the Bankruptcy Court) incurred by the Debtors or any Committee in an amount not to exceed

$25,000 in the aggregate for all professionals who are required to file fee applications with the Court (the "Retained Professionals").

(b)  Further the Carve-out shall be paid from the Pre-Petition Collateral or the Post-Petition Collateral, and the Retained Professionals shall not be required to obtain payment from the proceeds of the chapter 5 claims or any and all claims Debtors may have with respect to the Hillman Litigation or any other claims, rights, demands, and causes of action the Debtors may have against Mike Hillman and/or his non-debtor affiliates.  The term "Hillman Litigation" means that certain lawsuit styled and numbered Michael A. Hillman, Darlene Hillman and Grant Hillman v. Gulf Fleet Holdings, Inc. and Gulf Fleet Acquisition, Inc., Case No. 2010-1270-J, 15th Judicial District for the Parish of Lafayette, State of Louisiana.

(c)  The Carve-Out shall not include, and Cash Collateral shall not be used for, the payment or reimbursement of any fees or disbursements of the Debtors, any party in interest, the Committee, any additional committees appointed in the Chapter 11 Cases (if any) or any trustee appointed in the Chapter 11 Cases incurred in connection with the assertion and prosecution of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (x) commencing or prosecuting any action asserting claims pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or other cause of action (whether arising under state law, the Bankruptcy Code or other federal law) against the Agents or the Cash Collateral Lenders with respect to the validity and extent of the obligations hereunder or the obligations under the Pre-Petition Credit Documents, or the validity, extent and priority of the liens and security interests securing the obligations hereunder or the obligations under the Pre-Petition Credit Documents; or (y)

invalidating, setting aside, avoiding or subordinating, in whole or in part, the Agents and the Cash Collateral Lenders' liens on and security interests in the Post-Petition Collateral or Pre-Petition Collateral. Notwithstanding, the foregoing restrictions, (i) up to an aggregate of $35,000 of Cash Collateral may be used to pay professional fees and expenses incurred by the Debtors and (ii) up to an aggregate amount of $50,000 of Cash Collateral may be used to pay professional fees and expenses incurred by the Committee to investigate the extent, validity and priority of claims and liens of the Agents or the Cash Collateral Lenders relating to the Pre-Petition Indebtedness, but not to challenge any liens or claims relating to the Pre-Petition Indebtedness.

(d)     The Carve-Out shall not include any fees or expenses of a Chapter 7 trustee or any fees or disbursements arising after the conversion of any of the Chapter 11 Cases to a Chapter 7 case.

(e)     The dollar amounts available to be paid under the Carve-Out shall be reduced, on a dollar-for-dollar basis, to the extent proceeds of any Pre-Petition Collateral or Post-Petition Collateral are used to pay (i) fees or expenses of any professionals arising from and after the delivery of an Enforcement Notice and (ii) any Post-Petition retainer of any estate professionals not previously expended. The Agents and the Cash Collateral Lenders shall retain any and all rights as a party-in-interest to object to any claims of any professionals.

(f)     Nothing contained in this Fourth Interim Order shall be construed: (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Bankruptcy Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or

(ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of parties-in-interest to object to the reasonableness of such amounts.

29.     <u>Reporting Requirements</u>.   By the close of business on Tuesday of each week during the pendency of the Case, the Debtors shall provide to the Agents and the Committee; (a) a written cash-flow accounting for all cash collected during the preceding week; (b) accounts receivable aging report; (c) accounts payable aging report; (d) vessel charter status report; and (e) all expenditures of Cash Collateral and proceeds from the Petition Date to the date of reporting.  By the close of business on the 30th day following the end of each calendar month, the Debtors shall provide to the Agents and the Committee the following with respect to the prior month (and quarter if the month end also represents a fiscal quarter end): (a) internally prepared consolidated financial statements, including a balance sheet, income statement and cash flow, (b) accounts receivable aging, (c) accounts payables, and (d) vessel reports.

30.     Reporting requirements shall also include, but only with respect to any attempts to market or sell any of the Pre-Petition Collateral, (a) weekly status calls with the Cash Collateral Lenders and their advisors to discuss the status of the marketing process with respect to the sale of any of the Pre-Petition Collateral; (b) weekly written update of all parties contacted and status of each potential bidder on the Pre-Petition Collateral; (c) copies of indication of interest, letter of intent or other similar documents received as a result of the marketing process for any of the Pre-Petition Collateral; (d) copies of any purchase and sale agreements (including interim drafts) relating to the sale of any of the Pre-Petition Collateral.  If requested, the Debtors shall immediately make available to the Agents, the Cash Collateral Lenders (or any of their agents and professionals), and the Committee (or any of their agents and professionals) supporting

documentation for all receipts and expenditures, including, but not limited to, bank statements, contracts, invoices, copies of checks and general ledgers.

31. <u>Allocation of Adequate Protection Obligations</u>. The rights of the Debtors, the Committee, the Agents, the Cash Collateral Lenders, and all other parties-in-interest to seek an allocation among the Debtors' estates of, and the valuation in dollar terms between the respective Debtors' estates of, any Adequate Protection Obligations, including the Replacement Liens and the Superpriority Claims, are preserved for subsequent determination.

32. <u>Miscellaneous Provisions</u>.

(a)    Within 48 hours of entry of this Fourth Interim Order, the Debtors shall provide  (and shall continue to so provide) the Agents and any professionals retained by the Agents, with reasonable access during normal business hours to (i) the Debtors' premises and (ii) any and all books, records, documents and information relevant to the Debtors' business operations.

(b)    Nothing included herein shall prejudice, impair, or otherwise affect the Agents and the Cash Collateral Lenders' rights to seek any other or supplemental relief in respect of the Debtors' estate, including, without limitation, any right of the Agents and the Cash Collateral Lenders to seek entry of an order, upon motion, after notice and a hearing, to contest the granting of any liens on or security interests in all or any part of the Pre-Petition Collateral or to appear and be heard in respect of any other matter arising in or related to these Chapter 11 Cases.

(c)    Nothing contained in this Fourth Interim Order or otherwise shall constitute nor be deemed to constitute, directly or indirectly, by implication or otherwise, a waiver by the Agents or the Cash Collateral Lenders of their rights to assert that the Debtors are

obligated under the Pre-Petition Credit Documents to pay (i) the default interest rates specified therein, (ii) interest on interest, or (iii) fees, costs and other charges specified therein and nothing herein shall constitute a waiver by the Debtors, the Committee, and any other interested parties to contest same.

(d) As a result of this Fourth Interim Order (i) the Agents and the Cash Collateral Lenders shall not have liability to any third party nor shall they be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), or owe any fiduciary duty to the Debtors, their creditors or their estates, and (ii) the Agents' and/or the Cash Collateral Lenders' relationship with the Debtors shall not constitute nor be deemed to constitute a joint venture or partnership with the Debtors.

(e) The provisions of this Fourth Interim Order shall be binding upon and inure to the benefit of the Agents, the Cash Collateral Lenders, and the Debtors and each of their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these Chapter 11 Cases or any Chapter 7 case as a legal representative of the Debtors or any of the Debtors' estates.

(f) Based on the recitals, the Court finds the Agents and the Cash Collateral Lenders acted in good faith. In the event any or all of the provisions of this Fourth Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacatur shall affect the validity, enforceability or priority of any of the Replacement Liens or the Superpriority Claims. Notwithstanding any such

modification, amendment or vacatur, any claim granted to the Agents and the Cash Collateral Lenders hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Fourth Interim Order, and the Agents and the Cash Collateral Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the Replacement Liens and priorities granted herein, with respect to any such claim (including the Superpriority Claims).

(g)     The Debtors shall be and are hereby enjoined and prohibited without the Agents' prior written consent, from granting liens in the Pre-Petition Collateral, the Post-Petition Collateral, or any portion thereof to any other parties, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to or on a parity with or junior to the liens of the Agents and the Cash Collateral Lenders therein, unless the Agents and the Cash Collateral Lenders are first offered the opportunity to provide financial accommodations to the Debtors pursuant to § 364(c) or (d) on the same terms being offered by or solicited from such other parties.

(h)     Except on the terms of this Fourth Interim Order, the Debtors shall be and are hereby enjoined and prohibited from, at any time, using the Cash Collateral. Nothing in this Fourth Interim Order shall prevent or prohibit Debtors from seeking further authority from the Court to use Cash Collateral as permitted by law, provided that the rights, liens, administrative claims, Superpriority Claims, Replacement Liens, Adequate Protection Obligations, and protections contained in this Fourth Interim Order shall remain in place unless and until the Debtors repay in full the diminution in value of Cash Collateral in existence as of the Petition Date caused by the Debtors' expenditures of Cash Collateral hereunder.

(i)     The failure of the Agents or the Cash Collateral Lenders to seek relief or otherwise exercise their rights and remedies under the Pre-Petition Credit Documents or this Fourth Interim Order shall not constitute a waiver of any of their rights thereunder, hereunder, or otherwise.

(j)     This Fourth Interim Order shall be binding on the parties hereto and all other parties-in-interest, including the Committee or any ad hoc committee formed in this case. All rights of the Agents and the Cash Collateral Lenders to seek further adequate protection at any time upon motion after notice and hearing are hereby preserved.

(k)     The Debtors shall promptly deliver to the Agents and the Agents' Counsels any and all documentation that in any way relate to the solicitation, offer, or proposed sale or disposition of any material amount of property of these estates, including, but not limited to, letters of inquiry, solicitations, letters of intent, memorandum of agreements, or asset purchase agreements.  To the extent that the Debtors have already received such documentation, they shall deliver copies to the Agent within three (3) calendar days of the entry of this Order.

(l)     Except as specifically set forth herein, the Debtors shall not sell, transfer, lease (other than in the ordinary course of business), encumber, or otherwise dispose of any of the Pre-Petition Collateral without the Agents' prior written consent and/or order of this Court after notice and hearing.  The pre-petition liens of the Cash Collateral Lenders, as provided herein, shall attach to any proceeds of any sale of any Pre-Petition and Post-Petition Collateral.

33.     <u>Challenge Rights</u>. Any motion by Bank One Equity Investors BIDCO, Inc. ("<u>BIDCO</u>"), LBC Credit Partners II, L.P. ("<u>LBC</u>"), the Debtors, or the Committee exercising their Challenge Rights as to the Senior Agent or the Senior Bank Lenders, including seeking authority from this Court to challenge the extent, validity, or priority of the security interest and

liens of the Senior Agent or the Senior Bank Lenders or to assert claims against the Senior Agent or the Senior Bank Lenders in the these Chapter 11 cases shall be filed on or before September 7, 2010 (the "Challenge Period"); *provided, however*, that (a) the Committee may request in writing an extension of the Challenge Period, which the Senior Agent, on behalf of Senior Bank Lenders, may, in its sole and absolute discretion, agree to by a Stipulation Extending Challenge Period that will be signed by counsel and filed on or before the expiration of the Challenge Period; and (b) the Senior Agent on behalf of the Senior Bank Lenders shall use commercially reasonable efforts to provide the Committee copies of all documents evidencing their Indebtedness. Nothing in this Order shall limit the ability of or create any deadlines for the Committee's exercise of their Challenge Rights as to the Subordinate Agent or the Subordinate Lenders.

34.     Notwithstanding anything contained herein to the contrary, the extent, validity, perfection, enforceability, and priority of the Pre-Petition Indebtedness and the Cash Collateral Lenders' liens on the Pre-Petition Collateral are for all purposes subject to the rights of any party-in-interest with proper standing, other than the Debtors, to file a complaint pursuant to Bankruptcy Rule 7001, seeking to invalidate, subordinate, or otherwise challenge the Pre-Petition Indebtedness and/or the Cash Collateral Lenders' Pre-Petition liens upon and security interests in the Pre-Petition Collateral.

35.     Unless such motion as provided in paragraph 33 or such complaint as provided in paragraph 34 is timely filed by such parties in interest with proper standing to assert such motion or complaint, or the Committee within the Challenge Period then (a) the Senior Indebtedness and the Senior Bank Lenders' security interests in and liens upon the Pre-Petition Collateral shall be recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses, and perfected to the extent provided herein, and

the Prepetition Indebtedness shall be allowed in the full amount specified in paragraph 11 hereof pursuant to sections 502 and 506 of the Bankruptcy Code or any other applicable federal or state law, and (b) the acknowledgements contained in paragraph  11 shall be binding on all parties-in-interest.

36.     <u>Continuing Obligations</u>.   Unless and until the diminution in value of Cash Collateral existing on the Petition Date caused by the Debtors' expenditures of Cash Collateral hereunder has been indefeasibly repaid in full, in cash, the protections afforded to the Agents and the Cash Collateral Lenders under this Fourth Interim Order, and any actions taken pursuant thereto shall survive the entry of an order dismissing the Chapter 11 Cases or converting the Chapter 11 Cases into a case pursuant to Chapter 7 of the Bankruptcy Code.  The Replacement Liens in and to the Post-Petition Collateral and the Superpriority Claims shall continue in these proceedings and in any such successor case, and the Replacement Liens and Superpriority Claims shall maintain their priority as provided by this Fourth Interim Order until the diminution in value of Cash Collateral caused by the Debtors' expenditures of Cash Collateral hereunder has been indefeasibly paid in full in cash or otherwise satisfied in a plan of reorganization.

(a)     The grant of adequate protection hereunder is without prejudice to the right of the Agents or the Cash Collateral Lenders to seek modification of the grant of adequate protection provided by this Fourth Interim Order so as to provide different or additional adequate protection.

37.     <u>Automatic Stay Relief.</u>  Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of the bankruptcy petition.  To the extent necessary, the Agents and the Cash Collateral Lenders are granted relief from the automatic stay to take any and all steps and to exercise all rights and remedies provided for herein without requiring prior

authorization of this Court in connection with issues regarding the validity, enforceability, or priority of the Adequate Protection Obligations, the Replacement Liens, the Superpriority Claims, or other protections afforded to the Cash Collateral Lenders pursuant to the provisions of this Fourth Interim Order. Notwithstanding the foregoing, the automatic stay is <u>not</u> terminated to allow for the foreclosure or otherwise disposition of the Pre-Petition Collateral by any creditor or party-in-interest.

38. <u>Notice.</u> The notice given by the Debtors of the Interim Hearings and the Final Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court. The mailing of this Fourth Interim Order by first class mail, postage prepaid on the Master Service List shall be deemed compliance with the applicable notice provisions of Bankruptcy Rules 2002, 4001(c)(2), and the local rules of this Court.

39. Notwithstanding anything herein to the contrary, the rights and remedies granted under this Order in favor of Cash Collateral Lenders shall be terminated upon (i) the payment of any diminution of Cash Collateral existing on the Petition Date and (ii) no further use of Cash Collateral. The Court, upon notice and hearing, shall determine the extent of diminution of Cash Collateral existing on the Petition Date and in the event Debtors receive Post-Petition financing under 11 U.S.C. §364, the proceeds of which are used to discharge the amount of diminution, if any, determined by the Court, all rights and remedies, including, but not limited to liens, security interests and superpriority administrative claims granted herein shall terminate and be discharged and released.

40. <u>Immediate Entry</u>. This Fourth Interim Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062,

9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Fourth Interim

Order on the Court's docket in these Chapter 11 Cases.

**Gulf Fleet Holdings, Inc.**
**Exhibit A - Cash Collateral Budget**
**June 22, 2010**

| | | Actual | | | | | Budget | | | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Ending** | | 5/21/10 | 5/28/10 | 6/4/10 | 6/11/10 | 6/18/10 | 6/25/10 | 7/2/10 | 7/9/10 | 7/16/10 | 9 Week | Budget |
| 1 | **Beginning Cash Balance** | $1,192 | $1,158 | $2,067 | $1,483 | $1,515 | $2,268 | $2,345 | $1,818 | $2,015 | $1,192 | $2,268 |
| 2 | **Receipts:** | | | | | | | | | | | |
| 3 | Vessel Receipts | 577 | 938 | 123 | 157 | 1,389 | 309 | 282 | 455 | 125 | 4,355 | 1,171 |
| 4 | Other Receipts | 3 | - | - | 43 | - | 43 | - | - | - | 88 | 43 |
| 5 | **Net Receipts** | 580 | 938 | 123 | 200 | 1,389 | 351 | 282 | 455 | 125 | 4,443 | 1,213 |
| 6 | **Disbursement:** | | | | | | | | | | | |
| 7 | Operating Disbursements | | | | | | | | | | | |
| 8 | Critical Vendor Payments | (32) | (11) | (24) | - | (6) | (41) | - | - | (30) | (145) | (71) |
| 9 | Brazilian Vendors & Agent | (160) | - | (15) | (69) | (11) | (15) | - | (3) | (46) | (318) | (64) |
| 10 | Major Repairs and Maintenance | - | - | (14) | - | (14) | (155) | (25) | - | (25) | (233) | (205) |
| 11 | AP Disbursements | (3) | (12) | (143) | (70) | (134) | (63) | (225) | (75) | (100) | (824) | (462) |
| 12 | Payroll & Payroll Taxes | (419) | (6) | (391) | (10) | (397) | - | (431) | - | (456) | (2,110) | (887) |
| 13 | Employee Disbursements | - | - | (17) | - | - | - | - | - | - | (17) | - |
| 14 | Insurance Disbursements | - | - | (102) | (5) | - | - | (102) | - | - | (209) | (102) |
| 15 | Total Operating Disbursements | (614) | (30) | (706) | (154) | (561) | (274) | (783) | (77) | (657) | (3,855) | (1,791) |
| 16 | **Net Operating Cash Flows** | (34) | 909 | (583) | 47 | 827 | 77 | (501) | 378 | (532) | 589 | (577) |
| 17 | Legal / Professional / US Trustee Fees | - | - | - | (15) | (75) | - | (27) | (180) | - | (297) | (207) |
| 18 | **Net Cash Flow** | (34) | 909 | (583) | 32 | 753 | 77 | (528) | 198 | (532) | 292 | (785) |
| 19 | **Ending Cash Balance** | $1,158 | $2,067 | $1,483 | $1,515 | $2,268 | $2,345 | $1,818 | $2,015 | $1,483 | $1,483 | $1,483 |

**EXHIBIT "A"**