UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:                                                CASE NO. 10-50713

GULF FLEET HOLDINGS, INC., et al.                     CHAPTER 11

                          DEBTORS                     (Jointly Administered w/ Case Nos.
                                                      10-50714, 10-50715, 10-50716, 10-
                                                      50717, 10-50718, 10-50719, 10-
                                                      50720, 10-50721, 10-50722, 10-
                                                      50723)

**MOTION FOR ORDER AUTHORIZING SALES INCENTIVE PROGRAM
PURSUANT TO SECTIONS 105, 363(b)(1) AND 503(c)(3) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 6004(h)**

**NOW INTO COURT**, through undersigned counsel, come Gulf Fleet Holdings, Inc.,

Gulf Ocean Marine Services, LLC, Gulf Fleet Offshore, LLC, Gulf Fleet Management, LLC,

Gulf Fleet Marine, Inc., Gulf Fleet, LLC, Hercules Marine, LLC, Gulf Worker, LLC, Gulf

Service, LLC, Gulf Wind, LLC, and Star Marine, LLC (the "*Debtors*"), pursuant to Sections

105, 363(c), and 503(c)(3) of Title 11 of the United States Code (the "*Bankruptcy Code*") and

Federal Bankruptcy Rule 6004(h), and hereby move for the entry of an order authorizing the

Debtors to implement a sale incentive program (the "*Sale Incentive Program*") as described

hereinbelow. In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for

the relief requested herein include Sections 105(a), 363(b)(1) and 503(c) of the Bankruptcy Code

and Bankruptcy Rule 6004(h).

## FACTUAL BACKGROUND

2.      On May 14, 2010 ("*Petition Date*"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code. The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.   No trustee or examiner has been appointed in this jointly-administered case.

3.      Since the Petition Date, the Debtors, assisted by their financial and legal advisors, have undertaken a complete review of the Debtors' restructuring options with a view toward maximizing the recovery for all creditors.

4.      On February 17, 2011, the Debtors filed the *Motion of the Debtors Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 for Order (A) Approving Bid Procedures for Submission and Acceptance of Competing Bids in Connection with the Sale of Certain Assets of the Debtor; (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; (C) Establishing Procedures for Determining Cure Amounts; and (D) Fixing Notice Procedures and Approving Form of Notice* (the "*Sale Motion*") (**Docket No. 776**).

5.      Pursuant to the Sale Motion, the Debtors sought the approval of bid procedures and authority to conduct an auction of certain assets of the Debtors, including, but not limited to the Debtors' vessels (as defined in the Sale Motion), but excluding the Debtors' cash, accounts receivable, deposits, interests in insurance policies and proceeds, tax refund claims, and certain litigious rights and claims and causes of action of the Debtors (collectively, the "*Sale Assets*").

2

6.     Under the Sale Motion, the Debtors propose to distribute the proceeds of the Sale Assets pursuant to the terms and conditions set forth in the Debtors' Consolidated Plan of Reorganization (the "*Plan*") (**Docket No. 783**).

7.     Following a hearing on the merits on March 1, 2011, the Court entered its *Order (A) Approving Bid Procedures for Submission and Acceptance of Competing Bids in Connection with the Sale of Certain Assets of the Debtor, and Sale Hearing; (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; (C) Establishing Procedures for Determining Cure Amounts; and (D) Fixing Notice Procedures and Approving Form of Notice* (the "**Bid Procedures Order**") (**Docket No. 794**) on March 3, 2011.

8.     The Bid Procedures approves a timeline and process for marketing and auctioning the Sale Assets, including an April 8, 2011 deadline to submit bids, an April 20, 2011 auction, and a final hearing on the Sale Motion on April 26, 2011 for purposes of authorizing the sale(s) of the Sale Assets (the "*Sale(s)*") to the highest and best qualified bidder.

9.     In connection with this aggressive sales process, the Debtors require the services, experience, and skill of certain employees in order to maximize the value to be obtained by the Debtors for the Sale Assets for the benefits of the Debtors' estates under their proposed Plan.

10.     The Debtors' proposed Sales Incentive Program contemplates the use of $370,000.00 to provide incentive payments to the following six (6) employees (the "*Covered Employees*") in the following respective amounts to the extent that such persons remain employees in good standing with the Debtors as of the closing of the proposed Sale(s):

| Employee Name | Title/Position | Proposed Incentive Payment |
|---|---|---|
| Eric Madison | Port Captain | $20,000.00 |
| Glenda Thibodeaux | Human Resource Manager | $20,000.00 |
| Chris Dugas | Assistant Operations Mgr | $20,000.00 |
| Tracy Gunsch | Controller | $27,000.00 |
| Mark Crutcher | Operations Manager | $90,000.00 |

3

| Michael E. Prejean | Chief Financial Officer | $193,000.00 |

11. The Debtors' Senior Secured Lenders have consented to the relief requested in this Motion and have agreed to permit the use of $370,000.00 of its Cash Collateral in order to maximize the recovery for the benefit of the Debtors' estates.

12. The Debtors assert that implementation of the Sale Incentive Program is vitally necessary to maintain the ongoing stability of its remaining business operations during the sales process in order to maximize the going concern value of the Debtors' business as well as the Sale Assets.

13. In order to incentivize the Covered Employees to remain committed to the Debtors' business and to assist in the sale process, the Debtors have crafted the Sale Incentive Program to allow these employees the opportunity to obtain an incentive payment upon the successful consummation of the Sale(s).

14. The Debtors and their advisors submit that there is a real potential that the value of the Sale Assets will be substantially diminished if the Covered Employees do not actively participate in and support the Debtors during the Sale(s) process.

15. The amount to be paid to the Covered Employees under the Sale Incentive Program amount is far less than the value that would be lost by the Debtors' estates if such employees are not afforded incentive to fully commit their remaining time with the Debtors to the goal of maximizing the recovery in the upcoming Sale(s).

16. In addition to the myriad of business-related responsibilities, the Covered Employees have, and will continue to be, called upon to undertake substantial additional responsibility with respect to the Sale(s) without any revision being made to the salary to be paid to these individuals.

4

17. Specifically, they will act as the primary contact for responding to due diligence requests by potential bidders and purchasers, negotiate with potential purchasers as to terms and conditions, assist the Debtors' advisors in obtaining the approval of the Sale(s) as being in the best interest of the Debtors' estates for the benefit of all parties, and ultimately close the contemplated Sale(s).

18. Further, approval of the Sale Incentive Program is particularly critical insofar as it relates to the sole "insider" employee of the Debtor, Mr. Prejean, in that his services are an integral part of the Debtors' concerted efforts to successfully implement the bid and auction procedures recently approved by this Court as being in the best interests of the Debtors' estates.

19. Mr. Prejean's experience, expertise and active involvement in the Debtors' business and the auction and Sale(s) process is perhaps the single most important factor in maximizing the value to be obtained through this process.

20. At this late hour, Mr. Prejean is the Debtors' only remaining officer and the only remaining employee with the necessary skill and expertise to successfully operate the Debtors' continuing charter business and manage the remaining employees.

21. The Debtors respectfully submit that their ongoing business operations and the viability and success of the upcoming Sale(s) process and confirmation of their proposed Plan are all made nearly impossible if Mr. Prejean leaves his employment with the Debtors or if he is not incentivized to successfully consummate the proposed Sale(s) and confirm the Proposed Plan.

### RELIEF REQUESTED

22. By this Motion, the Debtors seek the approval of a Sale Incentive Program and authority to make the payments contemplated under the Sale Incentive Program to the Covered

5

Employees upon the successful consummation of the proposed Sale(s) in as set forth in paragraph 10 hereinabove. The authority sought by the Debtors herein is authorized by Sections 363(b) and 503(c)(3) of the Bankruptcy Code.

### Approval of Sale Incentive Program Under Section 363(b)

23.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Although Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, a sale of a debtor's assets should be authorized when there is an articulated business justification for doing so.[1]

24.     Whether a sufficient business justification has been articulated in connection with a proposed transaction depends on the facts of the case.[2] A bankruptcy court should consider "all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders alike."[3] Relevant factors may include: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition on the future plan of reorganization; the amount of

---

[1]     *See Licensing by Paolo v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).

[2]     *See In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

[3]     *Continental*, 780 F.2d at 1226; *Lionel*, 722 F.2d at 1071.

6

proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value."[4]

25. Once a debtor has articulated a valid business justification, "a presumption [arises] that the officers and directors of a corporation, in making a business decision for that corporation, act only after they have been appropriately informed and after they have honestly determined that the action to be taken is in the best interest of the corporation."[5] When applying the "business judgment" standard, courts show deference to a debtor's business decisions.[6]

26. For the reasons set forth hereinabove, the Debtors submit that providing incentive to the Covered Employees to remain fully committed to continuing the Debtors' business operations and successfully market and sell the Sale Assets for the benefit of their estates is a necessary and justifiable use of property of the Debtors' estates.

27. Therefore, a sound business justification exists to justify the approval of the Sale Incentive Program and the corresponding use of property of the Debtors' estates outside of the ordinary course of business under Section 363(b)(1) of the Bankruptcy Code.

## Approval of Payments Under Section 503(c)(3)

28. Next, the payments and obligations contemplated under the Sale Incentive Program should also be approved as an administrative expense of the Debtors' estates pursuant to Section 503(c)(3) of the Bankruptcy Code.

---

[4] See Continental, 780 F.2d at 1226; Lionel, 722 F.2d at 1071; In re Delaware & Hudson R.R. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Condere Corporation, 228 B.R. 615, 628 (Bankr. S.D. Miss. 1998).

[5] In re Performance Nutrition, Inc., 239 B.R. 93, 111 (Bankr. N.D. Tex. 1999).

[6] See, e.g., In re Tom's Foods Inc., 2005 WL 3022022, *2 (Bankr. M.D. Ga. 2005) ("courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence"); Atkins v. Hibernia Corp., 182 F.3d 320, 324 (5th Cir. 1999); GBL Holding Co. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Group, Ltd.), No. Civ. A. 3:04-CV-2411-M, 2009 WL 440379, *2 (N.D. Tex. Feb. 23, 2009) ("great judicial deference is given to [the debtor-in-possession's] exercise of business judgment").

29.     Section 503(c) of the Bankruptcy Code sets forth certain criteria that a Court should consider when determining whether an administrative expense exists for the payment of insiders or for "other transfers or obligations that are outside the ordinary course of business."[7]

30.     Sections 503(c)(1) and (2) are inapplicable when considering the proposed Sale Incentive Program, and the Court should look to Section 503(c)(3) when analyzing the permissibility of the relief requested herein.

31.     A plain reading of Section 503(c)(1) reveals that it relates to plans crafted solely for the purpose of retaining insiders, while Section 503(c)(2) relates solely to a severance plan.

32.     For example, in *In re Nobex*, the debtor sought and obtained court approval to implement a process for the sale of substantially all of its assets.[8] After obtaining such approval, The debtor sought authority to employ and pay these management personnel pursuant to Section 503(c)(3).[9] The Court granted the motion, reasoning that the sale-related incentive pay was not governed by 503(c)(1) or (2), but rather, was governed by 503(c)(3).[10] Further, the court held that the debtor's decision to make such payments was within the business judgment of the debtor.[11] In particular, the court took notice of the facts that requiring employees to participate in such a structured sales process was likely to require the employees to undertake more dynamic and amplified roles with the debtor, and that ensuring their involvement would maximize the value of the debtor's estate.[12]

---

[7]  11 U.S.C. § 503(c)(3).
[8]  *In re Nobex Corp.*, No. 05-20050, 2006 WL 4063024 (Bankr. D. Del. Jan. 19, 2006).
[9]  *Id.* at *1.
[10]  *Id.* at *3.
[11]  *Id.* at *2.
[12]  *Id.*

8

33. Numerous other courts, including at least one court in this Circuit, have also approved incentive payment plans under Section 503(c)(3) based upon reasoning similar to that of the court in *Nobex*.[13]

34. Just like in *Nobex*, in this case the Sale Incentive Program does not provide payment solely because the employees remain with the Debtors through a certain date or leave by a certain date. Instead, the Sale Incentive Program is premised upon employees remaining with the Debtors <u>and</u> committing their time and efforts over the next 30-45 days to the successful operation of the Debtors' business and consummation of the proposed Sale(s) for the benefit of the Debtors' estates. The continued employment of the Covered Employees with the Debtors also will likely require the Covered employees to undertake more dynamic and possibly expanded roles in assisting the Debtors' sale process.

35. Because the contemplated payments under the Sale Incentive Program do not provide bonuses merely for remaining until a certain date or leaving as of a certain date, but instead tie the contemplated bonus payments to meeting a certain objective, *i.e.*, the successful consummation of the Sale(s), the Court should look to Section 503(c)(3) in determining whether to approve the Sale Incentive Program. The proposed amounts are contingent upon a successful consummation of the sales process.

36. In examining the permissibility of payments to management and employees, including insiders, outside of the ordinary course of business under Section 503(c)(3), courts have consistently applied the "business judgment" standard.[14]

---

[13] *See In re Pilgrim's Pride Corp.*, 401 B.R. 229 (Bankr. N.D. Tex. 2009) (holding agreements providing for payments to former officers of debtor to consult with and not compete with debtor were permissible under Section 503(c)(3)); *In re Airway Indus., Inc.*, 354 B.R. 82 (Bankr. 2006); *In re Dana Corp.*, 358 B.R. 567 (Bankr. S.D.N.Y. 2006).

[14] *Nobex*, 2006 WL 4063024, at *2; *see also In re America West Airlines, Inc.*, 171 B.R. 674, 678 (Bank. D. Ariz. 1994)

37. For the reasons described above, the Debtors submit that in the exercise of their sound business judgment, the implementation of the Sale Incentive Program is necessary to effectuate the purpose of maximizing the value of the Sale Assets for the benefit of the Debtors' estates.

38. Authorization of the Sale Incentive Program will provide the Covered Employees with a greater sense of financial stability such that they will not be distracted from the important work to be undertaken by the Debtors over the coming days and weeks.

39. The Debtors further submit that the amount of the proposed Sale Incentive Program is less than the value that would be lost should one or more of the Covered Employees either leave the Debtors prior to the consummation of the Sale(s) or are not fully incentivized to perform at an optimal level during the remainder of the Sale(s) process.

40. Finally, the Debtors believe that to the extent this Court does not approve the Sale Incentive Program under Sections 363(b)(1) or 503(c)(3), Section 105(a) provides an alternative vehicle for the entry of an order approving this critical program.

41. Section 105 of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [Title 11]."[15]

42. A court may craft an order or decree under Section 105(a) of the Bankruptcy Code in order to preserve and protect the value of a debtor's estate for the benefit of the debtor's and its creditors and equity interest holders.[16]

---

[15] 11 U.S.C. § 105(a).
[16] *In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.")

10

43.     The Debtors have worked tirelessly throughout this Bankruptcy Case to sustain their ongoing business operations and going concern value, while simultaneously maintaining the value of their assets for the benefit of all interested parties.

44.     In connection with these efforts, the Debtors strongly and reasonably believe that the Sale Incentive Program is vital to the Debtors' efforts to consummate the contemplated Sale(s) and to confirm the Debtors' proposed Plan.

45.     In light of the foregoing, the Debtors submit that the Sale Incentive Program should be approved under Sections 105(a), 363(b)(1), and 503(c)(3) of the Bankruptcy Code and that payment thereunder shall be allowed as administrative expense of the Debtors' estates under Section 503(b) of the Bankruptcy Code.

### Need for Immediate Effect of Order and Without Stay

46.     Bankruptcy Rule 6004(h) provides that an order authorizing the use, sale, or lease of property will be stayed for fourteen (14) days after entry of such approval orders unless the court orders otherwise. Therefore, the Debtors request that the Court waive the applicability of Bankruptcy Rule 6004(h) to its order approving this Motion.

### Notice

47.     Notice of this Motion and the proposed Sale Incentive Program has been provided to (i) the United States Trustee, (ii) counsel for the Senior Secured Lenders, (iii) counsel for the Official Committee of Unsecured Creditors, and (iv) the parties appearing and requesting service pursuant to Bankruptcy Rule 2002.

48.     Contemporaneously with the filing of this Motion, the Debtors will be filing an *ex parte* request with the court to shorten the notice period required for the Motion and to set an expedited hearing on Tuesday, March 22, 2011 at 10:00 a.m.

11

49.     The Debtors submit that they have recently received the consent of the Senior Secured Lenders to the proposed relief, and that immediate relief is necessary in order to mitigate damage to the value of the Sale Assets that may occur as a result of employees either leaving the Debtors during the Sale(s) process or not being fully committed to such process.[17]

50.     In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**No Prior Request**

51.     No prior request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as is just and proper.

Respectfully Submitted,

LUGENBUHL, WHEATON, PECK,
    RANKIN & HUBBARD

Stewart F. Peck (#10403)
Christopher T. Caplinger (#25357)
Benjamin W. Kadden (#29927)
Joseph P. Briggett (#33029)
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
Email: speck@lawla.com; ccaplinger@lawla.com;
       bkadden@lawla.com; jbriggett@lawla.com
*Attorneys for the Debtors*

---

[17] Specifically, in the last four (4) weeks, the Debtors have lost three critical employees, Richard Currence, Jay Harkness and Todd Cheramie, all of whom have left the Debtors to take similar positions with other companies in the marine service industry.

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion for Order Authorizing Sales Incentive Program Pursuant to Sections 105, 363(b)(1), 503(c)(3) and Fed. R. Bankr. P. 6004(h) has been served upon the parties receiving CM/ECF, including parties appearing and requesting service, and upon the individuals listed on the attached service list, by depositing a copy of same in the United States mail, properly addressed, and first class postage prepaid, this 15th day of March 2011.

Adriatic Marine, LLC
P.O. Box 259
Harvey, LA 70059

BNA Marine Services
P.O. Box 150
Morgan City, LA 70380

BrasCrew service deRecrutamento
Av. Venezuela
27-10 andar-Centro
Rio de Janeiro Cep: 20.081-311
Brasil

Coastal Distributors, Inc.
503 Amarillo Drive
Houma, LA 70360

Coastal States FFST, Inc.
P.O. Box 1293
Amelia, LA 70340-1293

Cummins Mid-South, LLC
P.O. Box 842316
Dallas, TX 75284-2316

Doerle Food Services, LLC
113 Kol Drive
Broussard, LA 70518

Fleet Operators, Inc.
P.O. Drawer 350
Morgan City, LA 70381

FPS, Inc - New Orleans
821 Industry Road
Kenner, LA 70062

Genesis Offshore
P.O. Box 1660
Gray, LA 70359

Hudson Offshore
P.O. Box 1781
Morgan City, LA 70381

NREC Power Systems
P.O. Box 3016
Houma, LA 70361

Odyssea Marine, Inc.
2500 City West Blvd., Ste 1225
Houston, TX 77042

Port Logistic Agencia Maritima
Av. Venezuela, 27-10 andar
Centro-Rio de Janeiro
Cep: 20.081-311
Brasil

Qorval
2210 Vanderbilt Beach Road
Suite 1206
Naples, FL 34109

Star Tech Marine Electronics, Inc.
Fidelity Working Capital, LLC
P.O. Box 2671
Baton Rouge, LA 70821

Stewart Supply, Inc.
P.O. Drawer L
Morgan City, LA 70381

Thoma-Sea Ship Builders, LLC
P.O. Box 399
Bourg, LA 70343

Vacco Marine, Inc.
P.O. Box 8032
Houma, LA 70361

White & Case LLP
200 South Biscayne Blvd.
Suite 4900
Miami, FL 33131

Bank of America, N.A.
GA&-903-03-03
1355 Windward Concourse
Alpharetta, GA 30005

Bank One Equity Investors-Bidco, Inc.
Attn: Nemo Viso
236 Third Street
Baton Rouge, LA 70801

Bank of America
P.O. Box 45224
Jacksonville, FL 32232-5224

Brightpoint Capital
Attn: Jeff Zanarini
1001 Brickell Bay Drive
32nd Floor
Miami, FL 33131

LBC Credit Partners
Attn: Chris Calabrese
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104-2868

Comerica Bank
Attn: David Balderach
910 Louisiana Street, Ste 410
Houston, TX 77002

Comerica Bank
P.O. Box 650282
Dallas, TX 75265-0282

Office of the United States Trustee
300 Fanin Street, Room 3196
Shreveport, LA 71101

R. Patrick Vance
Mark A Mintz
Jones, Walker, Waechter, et al
201 St. Charles Ave., 49th Floor
New Orleans, LA 70170

Henry A. King, Timothy S. Madden &
Robert J. Stefani
King, Krebs & Jurgens, P.L.L.C.
201 St. Charles Ave., 45th Floor
New Orleans, LA 70170

Joseph P. Hebert
Liskow & Lewis
P.O. Box 52008
Lafayette, LA 70505-2008

Steven J. Solomon
Gray Robinson, P.A.
1221 Brickell Ave., Suite 1600
Miami, FL 33131

Phillip K. Jones
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA 70139

Alan H. Katz, Asst. General Counsel
Entergy Services, Inc.
639 Loyola Ave., 26th Floor
New Orleans, LA 70113

Michael J. McGinnis
El Paso Corporation
1001 Louisiana, Suite 1540B
Houston, TX 77002

H. Kent Aquillard
P.O. Box 391
Eunice, LA 70535

Thomas S. Henderson
Burleson Cooke, LLP
711 Louisiana, suite 1701
Houston, TX 77002

William P. Gibbens
Schonekas, Evans, McGoey & McEachin
650 Poydras Street, Ste 2105
New Orleans, LA 70130

Bayou State Marine & Indus Supply
c/o Craig A. Ryan
Onebane Law Firm
1200 Camellia Blvd., Suite 300
Lafayette, LA 70508

Alber J. Derbes, IV
The Derbes Dirm, L.L.C.
3027 Ridgelake Drive
Metairie, LA 70011-8176

Melanie M. Mulcahy
The Derbes Dirm, L.L.C.
3027 Ridgelake Drive
Metairie, LA 70011-8176

Alan H. Goodman
Lemle & Kelleher, L.L.P.
601 Poydras Street, Suite 2100
New Orleans, LA 70130

Timothy S. Mehok
Lemle & Kelleher, L.L.P.
601 Poydras Street, Suite 2100
New Orleans, LA 70130

Joel Babineaux
1201 Camellia Blvd., Ste 300
Lafayette, LA 70508

C. Berwick Duval, II
Duval, Funderburk, Sundbery,
Lovell & Watkins
P.O. Box 3017
Houma, LA 70361

Lucas Gaskamp
Sullins & Johnston
3200 Southwest Freeway, Suite 2200
Houston, TX 77027

J. Eric Lockridge
Kean Miller Hawthorne
D'Armond McCowan & Jarman
P.O. Box 3513
Baton Rouge, LA 70821-3513

Arthur S. Mann, III
Berrigan, Litchfield, Schonekas, Mann &
Traina, L.L.C.
201 St. Charles Ave., Suite 4204
New Orleans, LA 70170